## STATE v. FENTON VIRGIL VAN WERT.

199 N. W. 2d 514.

July 7, 1972—Nos. 42696, 42827.

*C. Paul Jones,* State Public Defender, and *Kenneth F. Kirwin* and *Doris O. Huspeni,* Assistant State Public Defenders, for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Murphy, Peterson, Kelly, and Nelson, JJ.

PER CURIAM.

In Appeal No. 42827, defendant appeals from a conviction for uttering a forged instrument. Minn. St. 609.625, subds. 1(1) and 3. In Appeal No. 42696 he appeals from a conviction for possession of a forged instrument, § 609.625, subds. 1 and 3, and from an order denying his motion for a new trial. Both convictions were after a trial by jury. In No. 42827, defendant presents eight issues which are set forth and discussed in paragraphs 1 to 8 herein. In No. 42696, he raises six issues which are identical to issues 1 to 6 in No. 42827 and which are discussed in paragraphs 1 to 6. Both convictions and the order denying the motion for a new trial are affirmed.

Instrumental to both convictions was the introduction into evidence of a vast array of check blanks, drivers' licenses, identification, and forging apparatus. The items were seized pursuant to a search warrant issued on the basis of a lengthy affidavit and petition for the warrant. The affidavit recites a long history of surveillance over defendant and the check-forging ring which he headed.

1. Defendant's first argument on appeal is that the affidavit does not justify a nighttime search. The affidavit states "that to prevent the

loss, destruction or removal of such property the search may necessarily have to be made in the nighttime." The lengthy affidavit presents a detailed account of the complex nature of defendant's check-forging activities. To prevent destruction of the easily disposable items, the police had to move quickly and in a coordinated manner. We believe that the factors described in the affidavit justified a warrant for a search "during either the daytime or nighttime."

2. Defendant contends that the search warrant was not sufficiently particular in its description. Search was authorized for "[c]heck protectors and typewriters used in the preparation of forged checks; stolen printed blank checks of business firms; and identification, particularly Minnesota drivers' licenses, in names other than Fenton VanWert, Pauline VanWert or Pauline Graves." Defendant urges that the description should have included the names of persons whose identification and business checks were the subject of the search and should have specified the make and model of the typewriter and check protectors. Such particularity was not needed in this case where defendant was under investigation for forgery rather than theft of a certain item.

3. Defendant's third argument is that items were seized which did not come within the search warrant, such as filled-in checks, an attorney's blank checks, and check stubs and registers. Such items come within the authorization of the warrant to seize "printed blank checks of business firms." Absolute exactness is not required if a strong relationship between the described and seized items exists. State v. Taylor, 290 Minn. 515, 187 N. W. 2d 129 (1971); State v. Bagley, 286 Minn. 180, 175 N. W. 2d 448 (1970).

4. Defendant also argues that certain check stubs and registers were inadmissible because they were not named in the inventory of seized items or at the Rasmussen hearing. This argument is of little merit since both in the inventory and at the Rasmussen hearing reference was made to "checks," which would include the check stubs and registers.

5. The final contention relating to the search warrant is that the evidence is inadmissible because the search did not take place until 27 hours after the issuance of the warrant, which authorized a search "forthwith." Such a delay in a case requiring skillful and coordinated police action is not unreasonable.

6. Defendant also questions the admissibility at his trials of certain statements made by him at his bail hearing. During defendant's bail hearing, he admitted that he lived at the house which was searched. When, at the two trials, defendant attempted to prove that he lived

elsewhere, his statement made at the bail hearing was admitted. Defendant relies on Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. ed. 2d 1247 (1968), in his argument that this constitutes reversible error. In Simmons, the court held that where the defendant asserted ownership of a suitcase in order to obtain standing to move to suppress at a pretrial hearing, this admission could not be used at the trial to rebut his denial of ownership. Simmons does not control the instant case. There, ownership was "an integral part of [the defendant's] Fourth Amendment exclusion claim." 390 U. S. 391, 88 S. Ct. 975, 19 L. ed. 2d 1257. The defendant had to assert ownership in order to move to suppress. In the cases before us, living at a certain address at the time of the search was not an integral part of the constitutional right to reasonable bail.

Defendant also contends that the statement should not have been admitted because there was no Miranda warning or Rasmussen notice. The absence of these procedures is not error when the statement is made in open court with the prodding of the defense attorney.

7. Defendant's seventh ground for reversal in No. 42827 is that he was denied his right to a Rasmussen hearing. Defendant was prosecuted for four separate crimes relating to check forging. The evidence seized was intended for use in all four prosecutions. At the end of the first Rasmussen hearing, the trial judge ruled that the seized evidence was admissible in all subsequent trials. No objection to this ruling was made at that time. Defendant was first tried and found guilty of possession of a forged instrument. Subsequently, he was tried for uttering a forged instrument, and Appeal No. 42827 follows from that prosecution. At this second trial he asked for and was denied a Rasmussen hearing. This ruling was correct. A defendant is entitled to a Rasmussen hearing to investigate the circumstances under which a seizure was made. Once that seized evidence or statement passes the Rasmussen test, the evidence or statements are admissible unless defendant can demonstrate a reason why the evidence is admissible in one trial and not the other. Here, defendant has failed to demonstrate what could be accomplished by an additional hearing or that he was prejudiced by the denial of the second Rasmussen hearing.

8. Defendant's final contention in No. 42827 is that the conduct of the bailiff was prejudicial. This argument is without merit.

The convictions and order are affirmed.

MR. JUSTICE TODD took no part in the consideration or decision of this case.

Mr. Justice MacLaughlin, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.